873 F.2d 1440
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Antonio S. QUINTANILLA, Plaintiff-Appellant,
v.
CONTINENTAL AIRLINES, INC., Defendant-Appellee.
 No. 88-3065.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 13, 1989.
Decided: March 31, 1989.
 
 Craig Sterling Watson (Cave & McKay; Clarence F. Stanback, on brief), for appellant.
 John Longstreth (William Gray Schaffer, Preston, Thorgrimson, Ellis & Holman, on brief), for appellee.
 Before ERVIN, Chief Judge, and JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Antonio S. Quintanilla appeals the district court's refusal to grant him a new trial after the jury awarded him only $2,622.28 (the amount of the medical bills stipulated to by the parties) in damages in his personal injury action against Continental Airlines. Quintanilla argues that a new trial is required because the jury limited his damages only to stipulated medical expenses and because of the remarks Continental's attorney made in closing arguments to the jury. We find no abuse of discretion in the district court's denial of Quintanilla's motion for a new trial.
 
 I.
 
 2
 Quintanilla brought suit against Continental Airlines to recover for injuries he allegedly sustained when a Continental employee spilled a stack of plastic trays on an escalator Quintanilla was riding at Dulles Airport in Northern Virginia. Continental admitted that its employee was negligent, and a jury trial was held to determine damages. Quintanilla sought more than $1.3 million in damages for past and future medical expenses, income loss, and pain and suffering. The jury returned a verdict awarding Quintanilla $2,622.28, an amount equal to that stipulated by the parties as Quintanilla's past medical bills for injuries sustained in the accident.
 
 
 3
 Much conflicting evidence was presented at trial on various aspects of Quintanilla's claim, including the impact of the accident on his ability to continue operating his automobile business, the effect of the accident on Quintanilla's physical mobility, and whether back problems and other physical ailments allegedly experienced by Quintanilla were attributable to the accident at Dulles Airport. The jury had before it considerable evidence that would allow it to infer that Quintanilla had greatly exaggerated his injuries. Furthermore, there was evidence that Quintanilla had overstated his income on tax returns introduced as evidence in the litigation.
 
 
 4
 Continental introduced evidence at trial that Quintanilla's federal income tax returns for 1983, 1984 and 1985, which plaintiff used as evidence of his pre-accident income, had been prepared only weeks before trial and apparently were not filed with the Internal Revenue Service until January 1988. Continental sought to dismiss on grounds that Quintanilla was trying to perpetrate a fraud upon the court. The district judge refused to dismiss the case, but stated: "I certainly think that the defendant can make the most out of cross-examining the plaintiff and other witnesses and put other evidence on to show that the income tax returns were not filed until the present time."
 
 
 5
 Quintanilla made several motions in limine seeking to exclude evidence of the circumstances surrounding the preparation and filing of his tax returns. Specifically, Quintanilla asked that Continental not be allowed to present any testimony concerning the fraudulent preparation of the returns. Although the district court noted that Continental had no direct evidence of fraud, the court ruled that Continental could present evidence about the tax returns and let the jury draw inferences from that information.
 
 
 6
 In his closing argument to the jury, counsel for Continental referred to the tax returns as "phony":
 
 
 7
 Does [Quintanilla] have a motive to exaggerate his symptoms, to make things up? You bet he does. He wants a million dollars.... He may have sprained his back, but a million dollars, ladies and gentlemen? That's why he is doing the things he is doing, that's why he prepared phony tax returns. That's why he put his businesses in his wife's name. That's why he stopped working.
 
 
 8
 Quintanilla's counsel objected, but the district court overruled the objection. Later, on consideration of Quintanilla's motion for a new trial, the district court emphasized that the comments about "phony tax returns" during closing argument went to Quintanilla's credibility and in no way violated any of the court's prior rulings on the motions in limine.
 
 
 9
 After the jurors began their deliberations, they requested information about the stipulated amount of Quintanilla's medical bills. Without objection from either party, the district court informed the jury of the amount. The jury returned a verdict awarding Quintanilla $2,622.28, exactly equal to the stipulated amount of the past medical expenses.
 
 
 10
 Quintanilla moved for a new trial.[1] After the district court denied the motion, Quintanilla appealed.
 
 II.
 
 11
 We must first decide whether the size of the jury award required the district court to order a new trial. In ruling on a motion for a new trial, the district court may weigh the evidence and assess the credibility of witnesses to decide if the jury's verdict was justified. Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir.1985), cert. denied, 475 U.S. 1016 (1986). The district court enjoys wide discretion in ruling on such a motion, and its decision will not be disturbed "absent a clear showing of abuse of discretion." Id. See also, Lindner v. Durham Hosiery Mills, Inc., 761 F.2d 162, 168 (4th Cir.1985) (district court's decision not reviewable on appeal "save in the most exceptional circumstances") (citations omitted).
 
 
 12
 The district court did not abuse its discretion in denying Quintanilla's motion for a new trial. The district judge found that Quintanilla was "not a very credible witness from the jury's point of view" and that conflicts existed in the evidence pertaining to the level of damages. Accordingly, he saw no reason to disturb the jury verdict. Both the jury and the district judge had the opportunity to view the witnesses during testimony and, therefore, were in the best position to judge credibility. Quintanilla might have appeared untrustworthy based on his demeanor on the witness stand. The record also contains adequate evidence from which the judge and jury could determine that Quintanilla had exaggerated, if not lied about, many of his injuries.
 
 
 13
 Quintanilla argues that the district court should have ordered a new trial because sufficient evidence was introduced to support his claim for various types of damages that the jury refused to award. Sufficiency of the evidence simply is not the standard by which we review a denial of a motion for a new trial. As we have emphasized, the district court may weigh the evidence and assess witness credibility in ruling on a motion for a new trial. In doing so, the district judge was free to disbelieve some or all of the testimonial evidence favorable to Quintanilla.
 
 
 14
 Quintanilla also asserts that the jury ignored the judge's instructions on damages and only considered the past medical expenses. There is absolutely nothing in the record to support that conclusion. It seems clear that the jury simply did not believe Quintanilla's evidence on other aspects of the damages, or at least did not find it as persuasive as that presented by Continental.
 
 
 15
 We find nothing in the record to justify granting Quintanilla's motion for a new trial, and certainly nothing to indicate that the district judge abused his broad discretion in refusing to do so.
 
 III.
 
 16
 Next, we must decide whether the district court was required to order a new trial because of the closing argument by Continental's counsel that characterized Quintanilla's tax returns as "phony." Trial judges enjoy broad discretion in ruling on objections about remarks made to the jury during closing arguments. "In reviewing the trial court's decision, this court must first consider whether the action was improper, and then evaluate the adequacy of judicial response ... In reviewing such matters, this court must extend 'great deference [to] the superior vantage point of the trial judge....' " DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 519 (4th Cir.1985) (citations omitted).
 
 
 17
 The district court did not abuse its discretion in finding no impropriety in the closing remarks by Continental's counsel. The district judge viewed the trial at close range and was in a better position than an appellate court to determine whether the evidence could reasonably give rise to an inference supporting the argument that the tax returns were "phony." The evidence in the record suggests that such an inference was permissible and that Continental's counsel did not overstep the line separating forceful advocacy from improper misleading of the jury. Continental presented evidence that the tax returns were prepared especially for the litigation and were not filed until January 1988, even though those returns were for the years 1983, 1984, and 1985. A jury could properly conclude from such evidence that the income figures on those returns should be considered suspect and perhaps greatly exaggerated, especially in light of Quintanilla's own admission that the returns overstated his actual income.
 
 
 18
 Furthermore, Continental's counsel did not violate the district court's rulings on the motions in limine by labeling the tax returns as "phony" during closing arguments. The district court had previously decided that Continental's counsel could introduce evidence of the circumstances surrounding the timing of the filing of the tax returns and let the jury draw inferences from such evidence. Continental's counsel merely argued to the jurors what inferences they should draw from that evidence. We cannot say on the record before us that the inference advocated by Continental's counsel lacked support in the evidence. Certainly, the district judge did not abuse his discretion in failing to find impropriety in Continental's closing argument.
 
 IV.
 
 19
 Neither the amount of the jury award nor the closing argument of Continental's counsel required retrying Quintanilla's case. The district court acted well within its discretion in denying Quintanilla's motion for a new trial. The judgment is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Quintanilla also moved for a judgment notwithstanding the verdict, but the district court refused to consider the motion because Quintanilla had failed to move for a directed verdict earlier in the proceedings